IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MDT PERSONNEL, LLC, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK MONGELLUZZI and | : | |
| ANNE MONGELLUZZI, | : | 10-5719 |
|     Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                       November 30, 2010

      Plaintiff MDT Personnel brings this action against Defendants Frank and Anne Mongelluzzi, asserting claims of breach of contract and tortious interference. Presently before the Court is Defendants' motion to dismiss for lack of personal jurisdiction. On November 23, 2010, the Court heard oral argument on this motion. The Court finds that Defendants are subject to personal jurisdiction in Pennsylvania for the reasons discussed below.

### I.     BACKGROUND

####     A.     The Asset Purchase Agreement and Related Contracts

      This case arises from the Mongelluzzis' sale of several temporary staffing companies to MDT Personnel ("MDT") in September, 2010. At the heart of this dispute is an Amended and Restated Asset Purchase Agreement dated September 2, 2010 ("APA"), which purports to transfer substantially all "property, assets and rights owned, licensed, or held for use" by eight corporate entities. (Compl. Ex. A. [APA] 4.) These are identified in Schedule I of the APA as follows: (1) Able Body Temporary Services, Inc., a Florida corporation; (2) Able Body Gulf Coast, Inc., f/k/a YJNK IX, Inc., a Florida corporation; (3) Professional Staffing-A.B.T.S., Inc., a Florida corporation;

(4) Westward Ho, LLC, a Florida limited liability company; (5) Westward Ho II, LLC, a Florida limited liability company; (6) YJNK III, Inc., d/b/a TCD Electrical Helpers, a Florida corporation; (7) YJNK XI CA LLC, a Florida limited liability company; and (8) Rotrpick, LLC, a Florida limited liability company (collectively, "Seller Companies").

Michael Traina executed the APA on behalf of MDT. (APA S1.) As noted in the APA, MDT is a Pennsylvania limited liability company. (*Id*. at 1.) Traina, the sole member of MDT, is a Pennsylvania resident. (*See* Pl.'s Mot. for TRO and Prelim. Inj. Ex. B. [Pl.'s Verified Adversary Compl.] ¶ 3.) The APA requires that the parties send all notices directed to MDT to the company's address in Doylestown, Pennsylvania. (APA § 10.8.) The APA does not contain a forum selection clause. However, the APA provides that it "shall be governed and construed in accordance with the domestic laws of the Commonwealth of Pennsylvania." (*Id*. at § 10.9.)

Anne and Frank Mongelluzzi executed the APA individually for the purpose of Sections 7.6(b), 7.8 and Article IX. These provisions relate to the transfer of the Seller Companies' assets and documents, a covenant not to compete with the Seller Companies for three years following the closing date, and remedies, respectively. (*Id*. at 20-21, 23-25.) The Mongelluzzis otherwise executed the APA on behalf of the Seller Companies. (*Id*. at S2-S3.)

The Mongelluzzis also signed a Transition Services Agreement ("TSA") and Consulting Agreements on September 2, 2010. (Compl. Exs. B, C, D.) The TSA requires the Seller Companies to make their employees available exclusively to MDT and prohibited them from discouraging employees from remaining with the MDT-owned businesses. (Compl. Ex. D. [TSA] Art. IX.) The TSA includes a choice of law clause designating Pennsylvania law as controlling and a choice of forum clause by which the parties consented to the exclusive jurisdiction of the state and federal

courts of Pennsylvania. (*Id*. at §§ 14.3, 14.11.) The Mongelluzzis did not execute the TSA in their individual capacities, but signed on behalf of the Seller Companies. (*Id*. at S2-S4.)

The consulting agreements were signed by Frank and Anne Mongelluzzi in their individual capacities. (Compl. Exs. B [Frank's Consulting Agreement], C [Anne's Consulting Agreement].) These agreements contain forum selection clauses directing that any "dispute, controversy or claim arising out of or relating to the construction or interpretation of [the Consulting Agreements] shall be conducted in the state courts of the Commonwealth of Pennsylvania." (Frank's Consulting Agreement at §9(c); Anne's Consulting Agreement at §9(c).)

Article X of the APA contains an integration clause which provides that the APA and its attached schedules and exhibits, including documents referenced in the APA, "constitute the entire understanding among the Parties," superseding prior understandings or agreements. (APA 26.) The APA refers to both the Transition Services Agreement and the Consulting Agreements. (*Id*. at 4, 9.)

### B. The Dispute Between MDT and the Mongelluzzis

MDT alleges that the Mongelluzzis received $40 million in exchange for the Seller Companies and the option to purchase an additional company. (Compl. ¶¶ 1, 11.) According to MDT, the Mongelluzzis immediately breached their obligations under the APA, TSA and Consulting Agreements by frustrating MDT's efforts to operate the businesses. Specifically, MDT claims the Mongelluzzis locked MDT out of facilities it operated in Florida and Louisiana, improperly filed for bankruptcy in the District of New Jersey in an attempt to unwind the sale, solicited MDT's customers and employees, and failed to provide consulting services. (*See id*. at ¶¶ 16-19.)

MDT commenced an adversary proceeding in the U.S. Bankruptcy Court for the District of New Jersey, where Frank Mongelluzzi had filed Chapter 11 petitions on behalf of himself and his

3

company, ABTS Holdings LLC. On October 13, 2010, the Bankruptcy Judge granted MDT's motion for a temporary restraining order enjoining Frank Mongelluzzi and his associates from interfering with MDT's possession of the Seller Companies. (Pl.'s Mot. for TRO and Prelim. Inj. Ex. D.) He also dismissed the bankruptcy action sua sponte on October 21, 2010, leaving the TRO in effect through October 28, 2010. (*Id*. Ex. F.) MDT filed this action on October 27, 2010. This Court has extended the TRO by stipulation of the parties.

## C. The Mongelluzzis' Contacts With Pennsylvania

The Mongelluzzis filed a motion to dismiss for lack of personal jurisdiction on November 11, 2010. In their motion, the Mongelluzzis assert that they "are Florida residents with no personal or professional relationship to Pennsylvania." (Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction [Mot. to Dismiss] 2.) The Mongelluzzis attached signed affidavits in which they assert that they have no business interests in Pennsylvania. (Mot. to Dismiss Ex. 1 [Frank Aff.] ¶ 10 ("I have no business interests in Pennsylvania."); Mot. to Dismiss Ex. 2 [Anne Aff.] ¶ 3 ("I have not conducted any business in Pennsylvania.").) The Mongelluzzis also deny having ever been subject to taxation, performed any services, maintained a telephone listing, or solicited any employees or business in Pennsylvania. (Frank Aff. ¶ 11; Anne Aff. ¶ 4.)

With respect to the transactions at issue, the Mongelluzzis assert that all negotiations with MDT and Traina took place in Tampa, Florida. (Frank Aff. ¶ 16; Anne Aff. ¶ 8.) In general, they contend that they have not been in Pennsylvania "in years." (Frank Aff. ¶ 17; Anne Aff. ¶ 9.) The deal's closing took place outside of Pennsylvania according to the Mongelluzzis, who also aver that they sent no payments to MDT in Pennsylvania. (Frank Aff. ¶¶ 12, 17; Anne Aff. ¶¶ 5, 9.) In fact, the Mongelluzzis argue that MDT itself is headquartered in Florida, noting that MDT's corporate

4

Web site lists an address in Clearwater, Florida. (Mot. to Dismiss 2.) The conduct underlying MDT's claims, meanwhile, took place in Florida and Louisiana. (Frank Aff. ¶ 20; Anne Aff. ¶ 11.)

The Court permitted MDT to engage in expedited discovery prior to a scheduled hearing on MDT's motion for a preliminary injunction. MDT learned through discovery that A.B.T.S., Inc., although a Florida corporation, has been registered to do business in Pennsylvania with the Pennsylvania Department of State for over a decade. (*Id*. at 6; MDT Opp'n Ex. 1 [A.B.T.S. Pennsylvania Filing History].) MDT also learned that Frank Mongelluzzi registered the business name "Able Body Labor" with the Pennsylvania Department of State, apparently in connection with A.B.T.S., Inc.'s operations in Pennsylvania. (MDT Opp'n Ex. 3 [Able Body Labor Pennsylvania Filing History].)

Frank Mongelluzzi is listed in the Department of State's records as president of Seminole Contracting Services, Inc., an entity registered to do business in Pennsylvania as a foreign corporation since 1997. (*Id*. Ex. 2 [Seminole Contracting Pennsylvania Filing History].) In addition, he is a member of Preferable HQ LLC, a corporation registered to do business in Pennsylvania. (*Id*. Ex. 4 [Preferable HQ Pennsylvania Filing History].) Evidence submitted by MDT suggests that Preferable HQ has done business with Pennsylvania companies, including Quality Packaging Specialists. (*Id*. Ex. 5 [Sterling Resource Funding Letter re: Preferable HQ].)

Further, the Mongelluzzis owned and sold two parcels of real estate in Pennsylvania between 1997 and 2005. (*Id*. Exs. 6, 7 [Pennsylvania Real Estate Records].) The Mongelluzzis apparently filed "deeds, mortgages and satisfaction of mortgages" in Pennsylvania in connection with their real estate holdings. (*Id*. Ex. 8 [Pennsylvania Online Real Estate Information Search Results].) MDT also observes that Frank Mongelluzzi listed two Pennsylvania businesses as creditors in his Chapter

11 petition. (MDT Opp'n 8.)

The Court received a copy of the Mongelluzzis' responses to MDT's jurisdictional discovery requests on November 22, 2010 (Defs.' Jurisdictional Resps.). In this document, and at oral argument, the Mongelluzzis asserted that Seminole Contracting Services has been inactive for the past decade, and that they do not know why the company is listed as on "active status" according to the Pennsylvania Department of State. (*Id*. at 3.) The Mongelluzzis deny that Frank Mongelluzzi is Seminole's president, responding that perhaps "his name appears on a secretary of state database, in whatever capacity, but the company is out of business." (*Id*. at 10.) The Mongelluzzis also deny having communicated with "business contracts" [sic] in Pennsylvania in the past six years, but admit to having communicated with Pennsylvania resident Traina. (*Id*. at 6.) The Mongelluzzis also admit to purchasing a home in Upper Darby, Pennsylvania, for Frank Mongelluzzi's aunt and uncle, Vicki and Frank Sisko. (*Id*. at 7.) They claim this home has been in the Siskos' name for the past six years. (*Id*. at 11.) Finally, the Mongelluzzis admit that Traina received emails from Frank Mongelluzzi, but assert that they do not know where Traina was located when he received the emails. (*Id*. at 14.)

## II.  STANDARD OF REVIEW

The plaintiff bears the burden of demonstrating facts that establish personal jurisdiction when a defendant raises a personal jurisdiction defense. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The plaintiff's factual allegations are taken as true and all factual disputes are drawn in the plaintiff's favor for the purpose of this analysis. *Id*. Establishing a prima facie case for the exercise of personal jurisdiction requires the plaintiff to demonstrate "with reasonable particularity

sufficient contacts between the defendant and the forum state." *Mellon Bank East (PSFS) Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff must offer "sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone" in its effort to withstand the defendant's motion. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990).

If the plaintiff meets this burden, the defendant must establish the presence of other considerations that would render jurisdiction unreasonable to prevail on its motion. *Brown & Brown, Inc. v. Cola*, Civ. A. No. 10-3898, 2010 WL 3928589, at *6 (E.D. Pa. Oct. 4, 2010) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).

## III. DISCUSSION

Federal district courts exercise personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the court sits. Fed. R. Civ. P. 4(e); *Mellon Bank*, 960 F.2d at 1221. Pennsylvania law provides for long-arm jurisdiction to the constitutional limits of the Due Process Clause of the Fourteenth Amendment under 42 Pa. C.S. § 5322(b). *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

The Due Process Clause requires a plaintiff to show that a defendant has sufficient "minimum contacts" with the forum state to satisfy traditional notions of fair play and substantial justice. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A plaintiff may satisfy this requirement either under a "traditional test" or, with respect to claims alleging intentional torts, a distinct "effects test." *Penn Mut. Life Ins. Co. v. BNC Nat'l Bank*, Civ. A. No. 10-625, 2010 WL 3489386, at *2 (E.D. Pa. Sept. 2, 2010) (citing *Marten v. Godwin*, 499 F.3d 290, 296-97 (3d. Cir.

7

2007)).

### A. The Mongelluzzis Did Not Waive Their Personal Jurisdiction Defense

As a threshold matter, the Court rejects MDT's argument that the Mongelluzzis have waived their objection to personal jurisdiction by stipulating to an extension of the TRO. (*See* MDT Resp. 13 n.6.) The defense of lack of personal jurisdiction may be waived if a party "permits it to lie dormant while subjecting an opponent to burdensome litigation on the merits." *In re School Asbestos Litig.*, Civ. A. No. 83-368, 1993 WL 298301, at *2 (E.D. Pa. Aug. 2, 1993). The Mongelluzzis' stipulation does not constitute such a waiver of the personal jurisdiction defense. *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 290-91 (E.D. Pa. 2009) (stipulation of service and motion to stay did not constitute pursuit of "affirmative relief" sufficient to waive objection to personal jurisdiction).

### B. Specific Jurisdiction Over the Mongelluzzis Under the Traditional Test

MDT argues that the Mongelluzzis are subject to specific jurisdiction in this forum based on the business relationship between the parties and the contracts memorializing that relationship. (MDT Opp'n 11-12.) Courts conduct a three-prong analysis to determine whether specific jurisdiction exists, examining: (1) whether the plaintiff's claims are related to or arise out of the defendant's contacts with the forum; (2) whether the defendant has the minimum contacts necessary to have reasonably anticipated being haled into court in the jurisdiction in question; and (3) whether the exercise of such jurisdiction would comport with traditional notions of fair play and substantial justice. *Capitol Ins. Co. v. Dvorak*, Civ. A. No. 10-1195, 2010 WL 4289864, at *2 (E.D. Pa. Oct. 29, 2010) (citing *Pennzoil*, 149 F.3d at 201).

*1. MDT's Claims Arise Out of the Mongelluzzis' Contacts With Pennsylvania*

MDT must demonstrate that the instant litigation arises out of or relates to at least one of the Mongelluzzis' contacts with Pennsylvania to obtain specific jurisdiction over the Mongelluzzis. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007). The Third Circuit does not mandate a mechanical test to clear this hurdle, but requires only a causal connection that, while "somewhat looser than the tort concept of promixate causation . . . must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id*. at 323.

MDT alleges that the Mongelluzzis breached the APA and Consulting Agreements, and tortiously interfered with the TSA. As discussed below, MDT has shown that these contracts are the result of a business relationship between the Mongelluzzis, Pennsylvania resident Traina and MDT, a Pennsylvania limited liability company. Further, MDT put forth evidence that one of the Seller Companies, Professional Staffing-A.B.T.S., Inc., has been registered to do business in Pennsylvania as a foreign corporation since January 27, 2000. (MDT Opp'n Ex. 1.) According to the Pennsylvania Department of State's online records, this company's status in Pennsylvania was "active" as of November 20, 2010. (*Id*.) MDT observes that Frank Mongelluzzi has served as president of the company, while Anne Mongelluzzi has served as its secretary and treasurer. (MDT Opp'n 7.) The fact that the Mongelluzzis registered at least one of the Seller Companies to do business in Pennsylvania serves as further evidence that this lawsuit relates to the Mongelluzzis' contacts with the state. Thus, for the purposes of the *O'Connor* test, the litigation in this case relates to the Mongelluzzis' activities in Pennsylvania.

## 2. Minimum Contacts

Next, MDT must show that the Mongelluzzis had sufficient minimum contacts with Pennsylvania to render personal jurisdiction in this state consistent with the requirements of the Due Process Clause. To meet this burden, MDT offers evidence that the Mongelluzzis maintained an intensive business relationship with Traina. MDT also cites the contracts at issue, observing that the APA, TSA and Consulting Agreements contain choice of law and choice of forum clauses which mandate the application of Pennsylvania law in Pennsylvania courts. This combination of contacts and contracts carries the day for MDT.

### a. The Mongelluzzis' Communications With Traina

In the context of a business relationship, a stream of telephone calls and emails directed to a party's Pennsylvania headquarters is evidence that a defendant purposefully availed himself of the privilege of conducting business in the state. *See KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, Civ. A. No. 08-2201, 2010 WL 1047807, at *7 (E.D. Pa. Mar. 19, 2010). Such communications are particularly probative of the existence of "minimum contacts" where they arise from a long-term business arrangement. *Id*. (citing *Grant Entm't Grp., Ltd. v. State Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)). A large volume of emails also weighs in favor of finding that personal jurisdiction exists. *Hodgson v .Man Fin. Inc.*, Civ. A. No. 06-1944, 2006 WL 379134, at *4-5 (E.D. Pa. Dec. 22, 2006) (characterizing as "significant" a "large volume of e-mail communications" between parties in Pennsylvania and the Cayman Islands in determining that "when taken as a whole, they indicate a flow of communications back and forth . . . sufficient to carry, at this stage, Man's burden of establishing minimum contacts."). *Id*. at *4.

MDT asserts that the APA, TSA and Consulting Agreements at issue were the product of

10

"months of negotiations and dozens and dozens of e-mails exchanged between Mike Traina (a Pennsylvania resident) and Frank Mongelluzzi (a Florida resident)." (MDT Opp'n 3.) MDT represents that the Mongelluzzis have produced approximately 145 pages of email messages sent between the parties from December 2009 to October 2010. (*Id*. at 3 n.2.) At this stage, taking MDT's factual allegations as true and resolving all factual disputes MDT's favor, the Court concludes that MDT has shown that the Mongelluzzis availed themselves of the privilege of conducting business in Pennsylvania through their lengthy business relationship with MDT and Traina. Though the Mongelluzzis insist they had no knowledge as to Traina's whereabouts when they communicated, their purported ignorance is belied by the prominence of MDT's Doylestown address and status as a Pennsylvania limited liability company in the APA. (*See* APA at 26-27.)

    b.  *The Contracts*

Though the mere existence of a contract is insufficient to establish minimum contacts, parties who create continuing relationships and obligations pursuant to a contractual relationship "are subject to regulation and sanctions in the other State for the consequences of their activities." *KDH*, 2010 WL 1047807, at *8 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). The Mongelluzzis created just such a relationship in agreeing to provide transition and consulting services to MDT after the sale contemplated by the APA.

The APA's choice of law clause, mandating the application of Pennsylvania law, is likewise a factor which may demonstrate that the Mongelluzzis could reasonably foresee that their acts would have an effect in Pennsylvania, though such provisions standing alone are insufficient to establish personal jurisdiction. *See General Motors Acceptance Corp. v. Keller*, 737 A.2d 279, 282 (Pa. Super. Ct. 1999) (citing *Burger King*, 471 U.S. at 479, 482)).

Finally, the choice of forum clauses in the TSA and Consulting Agreements overcome the Mongelluzzis' assertion that they did not anticipate being subject to personal jurisdiction in Pennsylvania. As noted above, the Mongelluzzis consented to the exclusive jurisdiction of the Pennsylvania state courts for the purposes of the Consulting Agreements. (Frank's Consulting Agreement at §9(c); Anne's Consulting Agreement at §9(c).) The TSA, which is signed by both Anne and Frank Mongelluzzi on behalf of the Seller Companies, consents to the exclusive jurisdiction "of the state and federal courts located in the Commonwealth of Pennsylvania" for the purpose of enforcing the TSA. (TSA § 14.11; S2-S4) These mandatory forum selection clauses, along with the Mongelluzzis' other contacts with Pennsylvania in the course of their business relationship with MDT, clearly indicate that Anne and Frank Mongelluzzi anticipated the possibility of being haled into a Pennsylvania court as a consequence of their deal with MDT.

    c.  *MDT Has Established a Prima Facie Case For Personal Jurisdiction*

It is this combination of contacts that renders personal jurisdiction over the Mongelluzzis appropriate in Pennsylvania. As MDT's counsel noted at oral argument, the precedent upon which the Mongelluzzis rely does not address the totality of the contacts at issue in this case. In *New Trail Capital v. Northwest Co.*, for example, this Court observed that emails, phone calls and faxes sent by a defendant into Pennsylvania, without more, were insufficient to establish personal jurisdiction. Civ. A. No. 07-2073, 2007 WL 2892949, at *4 n.3 (E.D. Pa. Oct. 4, 2007). The case involved neither a choice of forum nor a choice of law clause. Significantly, the Pennsylvania-based plaintiff in that case was also not a party to the contract at issue. This led the Court to conclude that the defendant never directed its activities at Pennsylvania for any reason related to that agreement. *Id*. at *3. The length, intensity, and character of the Mongelluzzis' business relationship with MDT

distinguishes this case.

The Mongelluzzis also cite this Court's holding in *Utilitech v. Somerset Medical Center* to support their assertion that the combination of a choice of law clause and a string of phone calls, letters, emails and faxes is insufficient to establish personal jurisdiction over an out of state defendant. Civ. A. No. 06-1232, 2006 WL 1687046, at *7 (E.D. Pa. June 15, 2006). The presence of mandatory forum selection clauses in two of the contracts at issue — absent in *Utilitech* — is fatal to the Mongelluzzis' argument.

MDT has therefore demonstrated that the Mongelluzzis have sufficient minimum contacts with Pennsylvania to permit the exercise of personal jurisdiction in this state.

### 3. *Fair Play and Substantial Justice*

The existence of minimum contacts makes jurisdiction presumptively constitutional, requiring defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" to show that the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 324. Several factors inform the Court's analysis, including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of the case. *Id*.

The Mongelluzzis entered into a set of agreements with a Pennsylvania resident acting on behalf of a Pennsylvania corporate entity. Looking at the agreements as a whole, the Court notes that the Mongelluzzis consented to the application of Pennsylvania law and the exclusive jurisdiction of Pennsylvania courts in agreeing to portions of the APA and Consulting Agreements in their individual capacities. It would offend neither fair play nor substantial justice to hale the

Mongelluzzis into court in Pennsylvania given these facts. *See Law Office of Marvin Lundy v. Whitehaven S.F., LLC*, Civ. A. No. 10-4544, 2010 WL 4178643, at *4 (E.D. Pa. Oct. 22, 2010).

### C. Intentional Tortious Conduct and Personal Jurisdiction

MDT alleges that the Mongelluzzis tortiously interfered with the TSA and APA. Specifically, MDT claims that Frank Mongelluzzi solicited employees of the Seller Companies to leave MDT and join the Mongelluzzis in operating a competing company, EmployUS. (Compl. ¶ 25.) EmployUS allegedly continues to "target" MDT's employees. (*Id.* at ¶ 35.)

As discussed above, MDT has established that the exercise of personal jurisdiction is appropriate under the "traditional test." An application of the alternative "effects test" is thus unnecessary. *See Leone v. Cataldo*, 574 F. Supp. 2d 471, 479 n.1 (E.D. Pa. 2008). However, out of an abundance of caution, the Court will apply this test with respect to MDT's tort claim. *See Penn Mut. Life Ins. Co. v. BNC Nat'l Bank*, Civ. A. No. 10-625, 2010 WL 3489386, at *6 n.5 (E.D. Pa. Sept. 2, 2010) (acknowledging court's application of both "traditional" and "effects" tests to intentional tort claims).

MDT's allegations provide a basis for exercising personal jurisdiction over the Mongelluzzis under the "effects test" enunciated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder*, a plaintiff may demonstrate personal jurisdiction if he shows: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of that harm; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Marten*, 499 F.3d at 297. This test renders a defendant subject to personal jurisdiction who might otherwise not have sufficient contacts with the forum, as *Calder* replaces the first and second

factors of a traditional constitutional personal jurisdiction analysis in these cases. *See Brown & Brown*, 2010 WL 3928589, at *11 (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)).

Tortious interference with contractual relations is an intentional tort under Pennsylvania law. *See PSC Info Group v. Lason, Inc.*, 681 F. Supp. 2d 577, 596 (E.D. Pa. 2010) (citing *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 384 (3d Cir. 2004)). MDT thus alleges that the Mongelluzzis committed an intentional tort. MDT also maintains that it felt the brunt of the harm in Pennsylvania, where it is headquartered and where its sole member resides. Further, it is reasonable to infer both from MDT's complaint and the evidence MDT has provided that the Mongelluzzis knew MDT would suffer harm as a result of their allegedly tortious conduct and that they aimed their conduct at Pennsylvania by establishing and maintaining a business relationship with MDT. MDT could thus also obtain jurisdiction over the Mongelluzzis with respect to its tort claim under the *Calder* effects test. *See Brown & Brown*, 2010 WL 3928589, at *13.

## IV. CONCLUSION

MDT has demonstrated that personal jurisdiction may appropriately be exercised over the Mongelluzzis in Pennsylvania. An Order consistent with this Memorandum will be docketed separately.